# JOHN W. GOETZ AND LOUIS W. REISS

# v.

# SETH F. HANCHETT, SHERIFF.

*Insolvency—Fraudulent Sale—Attachment—Replevin—Estoppel.*

1. In an action of replevin brought against a sheriff to recover goods levied upon by virtue of attachment writs, said goods having been purchased by plaintiffs from an insolvent firm, the plaintiffs in the attachment suits contending that said sale was in fraud of creditors, this court holds that the same was fraudulent and that the plaintiffs herein purchased with knowledge of the intended fraud.

2. In the case presented. this court holds, that the contention of the plaintiffs that the finding that said sale was fraudulent is unsupported as to certain silks purchased by them from another firm shortly before the levying of the attachment writs, can not be sustained in view of the fact that they stood by and allowed such levy without explaining to the sheriff that the goods in question did not belong to the stock purchased from the attachment debtors, that there was nothing about. the goods in question to put the officer on notice that such goods did not belong to such stock, and declines to interfere with the judgment for the defendant.

[Opinion filed February 10, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. QUIGG & BENTLEY, for appellants.

Messrs. BRANDT & HOFFMANN and C. H. REMY, for appellee.

MORAN, P. J.   This was an action of replevin brought by appellants against Hanchett, as sheriff, to recover certain goods levied upon by said sheriff by virtue of a number of attachment writs against the firm of Strouse & Meyer.   Appellants had purchased a stock of goods from said Strouse & Meyer, who were shown to have been insolvent at the time of said sale, and the ground on which the creditors in the attachment suits claimed the right to hold the goods levied on, is that said sale was made by Strouse & Meyer with the intent on their part to hinder, delay and defraud their creditors, and that said Goetz & Riess knew of such insolvency and such fraudulent intent when they purchased the goods, or were chargeable with such knowledge from facts and circumstances sufficient to put them on inquiry.

The case was tried before a jury and a verdict rendered against appellants, under instructions, of which, so far as regards the questions of the insolvency and fraudulent intent of Strouse & Meyer at the time of sale to appellants, and appellants' knowledge thereof, no complaint is made by counsel on this appeal.

The contention is that the verdict of the jury finding the sale fraudulent, is clearly against the weight of the evidence, and should not be allowed to stand

The case was reviewed once before in this court, and is reported in 25 Ill. App. 445, where the transactions of the parties and the circumstances connected with them are stated somewhat at length.   The evidence in this record on the question of the fraud in the sale and appellants' knowledge thereof and participation therein, is substantially the same as was then considered.   Upon those questions, Mr. Justice Bailey, speaking for the court, then said:   "The evidence of

a fraudulent intent on the part of Strouse & Meyer, was sufficient, we think, to have warranted the jury in finding in favor of the attaching creditors on that issue. But that fact alone was clearly insufficient to entitle said creditors to a verdict. It was necessary that they should also succeed upon the issue of notice of such intent to Goetz & Company. We can not doubt that the circumstances disclosed by the evidence tending to charge Goetz & Company with such notice were sufficient to fairly present a question for the consideration of the jury."

The case was then reversed for error in instructions in submitting the question of notice of the fraud to the jury. The same conflict of evidence was again presented on this issue, and the jury, under correct instructions, have found against appellants, and a careful consideration of the record leads us to the conclusion that as to this particular issue the finding is clearly supported, and is not, as appellants contend, against the weight of evidence. The condition of the evidence as to said issue is such that a verdict either way under correct instructions could not properly be disturbed by a reviewing court.

We must, therefore, deny appellants' contentions as to this point, and rest upon the verdict as settling that Strouse & Meyer made the sale of their stock of merchandise to appellants with the fraudulent intent of hindering and delaying their creditors, and that appellants had knowledge of that intent and participated in it in making the purchase.

It is further contended by appellants, that even if the sale be considered fraudulent, the verdict can not be supported as to fifty-eight pieces of silk which it is claimed had been purchased by appellants from Marshall Field & Co. a few days prior to the levy of the attachment writs, and which had never been the property of Strouse & Meyer.

Upon this point the court gave the following instruction, of which appellants complain:

" Even though the jury may believe from the evidence that Goetz & Co. purchased some silks from Field & Company, yet if the jury further believe from the evidence that

Goetz v. Hanchett.

Goetz & Co. fraudulently mixed such silks with a much larger quantity of silks bought by them from Strouse & Meyer, so that they could not be distinguished from each other, if the jury believe from the evidence they could not be so distinguished, and that the deputy sheriff Burk levied on said silks in the presence of the plaintiffs, Goetz & Riess, as the property purchased by Goetz & Riess from Strouse & Meyer, if the jury so believe from the evidence, and that the plaintiffs knew said fact and did not attempt to distinguish the Field goods from the others, nor notify the deputy sheriff that any of the same were purchased from Field & Company, but permitted him to take the same supposing they were the goods purchased by the plaintiffs from Strouse & Meyer, then the jury are instructed that they should, in their verdict, treat said goods purchased from Field & Company the same as if they were a part of the goods purchased by the plaintiffs from Strouse & Meyer."

It is contended by appellants that there is no evidence from which the jury could find that they had fraudulently mixed the silks purchased from Field with the silks purchased from Strouse & Meyer, and that the evidence showed that the Field silks could be distinguished from the other silks, by tabs upon the pieces showing the manufacturers' names. It is probably true that said silks could be distinguished by some of the clerks of Goetz & Riess by marks known to them. If, then, the verdict of the jury on this branch of the case could only rest on the hypothesis of a fraudulent intermixture contained in the instruction above set out, it may be that it could not be sustained. A fraudulent intermixture was not proven.

But there is another theory on which the verdict may in our opinion be sustained, and which was stated to the jury in the following instruction:

"Even though the jury shall believe from the evidence that part of the goods seized by the sheriff and in controversy in this suit were bought by Goetz & Co. from Marshall Field & Co. after the purchase of the Strouse & Meyer stock, yet if the jury further believe from the evidence that

Goetz & Riess were present when such levy was made, and knew that the sheriff intended to levy on the goods which composed the Strouse & Meyer stock, and that Goetz & Riess knew that the goods levied upon were those bought from Field & Co., and permitted said sheriff to make said levy under the supposition that said goods were the Strouse & Meyer stock, and that they did not then tell the sheriff that such goods had been by them purchased from Marshall Field & Co., and were not a part of the Strouse & Meyer stock, then the jury are instructed that they are estopped to claim said goods so levied on were not the Strouse & Meyer stock."

There was, in our opinion, evidence requiring the jury to find against the appellants under said instruction.

At the time the levy in question was made, only four days had elapsed since the purchase by appellants of the stock of Strouse & Meyer. The jury have found that said purchase was made with the intent to hinder, delay and defraud the creditors of Strouse & Meyer. On the very day of the said purchase, after the transfer, the same deputy who levied this writ levied an attachment on the stock which had been sued out by creditors of Strouse & Meyer, and at the request of appellants and for their convenience said prior levy had been made upon the silk stock, as being the portion of the stock the seizure of which would be least likely to interfere with appellants' business. When the officer came to appellants' store with the attachments now in question, all the circumstances of the former levy were fresh in his recollection and in the knowledge and recollection of appellants. It is in evidence that one of appellants spoke to the deputy as he came into the store to make the levy, and that the officer proceeded to the same part of the store and levied his writ on the same class of goods on which he had before levied, and that he made appellants' clerk, who knew the difference between the Field silks and the Strouse & Meyer silks, custodian of the pieces of silk on which he made the levy. The officer's course in levying only upon some pieces of silk made it clear that he was not seizing the entire stock upon his attachment, and appellants knew that the attachment was by creditors of

Goetz v. Hanchett.

Strouse & Meyer, and it appears to us must have known that the officer supposed he was levying on the Strouse & Meyer goods.

Admitting that some of appellants' clerks, from their knowledge of certain marks on the Field silks, could have distinguished them, yet there was nothing about them to put the sheriff on notice that they did not belong to the Strouse & Meyer stock. They were piled on the shelves and counters and comprised a part of the silk stock of the establishment, on a portion of which he had, at the request of the appellants, levied his prior writs. The levy was close on the heels of the purchase from Strouse & Meyer; it was at a season of the year when sales of dry goods, and particularly of silks, were slow. There was nothing whatever to suggest the thought to the deputy that silks had been purchased from others than Strouse & Meyer, and were mingled with the stock on which he had so recently levied his prior attachment. Now, under these circumstances, was it the officer's duty to inquire, or was it the appellants' duty to notify him of the fact, that goods were in the silk stock which they had purchased from Field & Co.?

The case is not in its facts like that of Smith v. Sanborn, 6 Gray, 134, cited and relied on by appellants. There the entire stock in the store was seized on the attachment, and the seizure was made after the lapse of a month from the fraudulent transfer. Nor do we think there is any basis in the facts of this case, for the suggestion that appellants could not know but that the levy was made on the assumption that the whole business was secretly carried on for Strouse & Meyer.

We are compelled to imply from the verdict that they knew the fact to be that they had made a fraudulent purchase of the Strouse & Meyer stock, and we think it a rather strained inference that they did not know that the creditors were attacking the sale on the true theory rather than seeking to secure their debts upon a false one.

Is it not a more natural conclusion from all the circumstances, that knowing they had in their possession goods liable to the claims of the attachment plaintiffs, in value of more than

five times the amount required to satisfy the writs, they allowed the deputy to fall into a mistake natural to him, but known to them, and by which they expected to profit? Had they notified him that there were goods which they did not purchase from Strouse & Meyer, he would undoubtedly have required them to point them out, or have satisfied his writ from the abundant property purchased from Strouse & Meyer, which appellants knew should go to satisfy the attaching creditors; but to let him levy on these Field silks would enable them to dispose of the Strouse & Meyer stock without hindrance, and then to recover for these on proof that they did not belong to that stock, and so to be the gainers by the operation in about the sum of $10,000.

They were silent when the circumstances required them to speak. They have lost nothing by such silence. They can not be permitted to speak now for the purpose of making a profit from their silence. The office of an estoppel is to prevent injustice. Here it effects justice and prevents wrong.

Therefore the error of giving the instruction first above set out will not operate to reverse this case. The estoppel arises without the proof of fraudulent intermixture of goods indistinguishable from the mass. Defendants were entitled to the verdict on a less onerous burden of proof than it required from them.

The judgment will therefore be affirmed.

*Judgment affirmed.*